<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARIN KADAKIA, | |
| | Civil Action No. 13-2450 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, ROBERT WOOD JOHNSON MEDICAL SCHOOL and SARANG KIM, | March 24, 2015 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is a Motion for Summary Judgment filed by defendants Rutgers, the State University of New Jersey ("Rutgers")[1], Robert Wood Johnson Medical School ("RWJMS" or the "Medical School"), and Sarang Kim ("Dr. Kim") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion.

**FACTUAL HISTORY**

---

[1] On July 3, 2013, counsel for Defendants filed a Notice of Name Change indicating that the University of Medicine and Dentistry of New Jersey ("UMDNJ") changed its name to Rutgers, the State University of New Jersey. (Dkt. No. 14.)

1

*Plaintiff's Background*

In 2005, Plaintiff Sarin Kadakia ("Plaintiff") began his undergraduate studies at Rutgers. (Declaration of William F. Maderer ("Maderer Decl."), Ex. B). In 2007, he was accepted into the Joint BA/MD program with RWJMS, which combines undergraduate and medical school courses to allow students to complete both degrees in approximately seven years. (*Id.* at Ex. C, Kadakia Dep. Tr. 88:3-12, 89:1-19.)

*Academic Policies*

The RWJMS Academic Rules and Regulations, of which Plaintiff was aware during his participation in the Medical School program, include the Medical School's grading system and the procedures for students who are struggling academically. (Maderer Decl. Ex. C, Kadakia Dep. Tr., 106:10-23; Ex. D, E.) The Academic Rules and Regulations provide, in pertinent part:

1) The Medical School's "Academic Standing Committee will review the academic record of any student taking a full academic load who has received within one academic year (irrespective of re-examination or other remediation) . . . two or more initial grades of 'Fail' in pre-clinical courses . . . [and] [s]uch students may be placed on Academic Warning." (*Id.* at Ex. D, Section VIII, Part G(1)).

2) "The Academic Standing Committee will review the academic record of any student who has received within one academic year (irrespective of re-examination or other remediation) . . . one or more initial grades of CP, Fail and/or WF in a clinical course."[2] (*Id.* at Ex. E, Section VIII, Part E(3)).

---

[2] A grade of "CP" stands for "Conditional Pass," which is lower than a pass, but higher than a fail. A grade of "WF" stands for "Withdrawal" in academic difficulty. (Maderer Decl., Ex. E, Section III).

2

3) "Consideration for dismissal from the medical school will result under the following conditions . . . Two initial grades of Fail or three or more initial grades of CP are received (irrespective of remediation) in the clinical curriculum . . . [and] [f]or purposes of calculation, grades of WF and initial grades of CP are equivalent to one-half of an initial grade of Fail. In addition, a CP which converts to a Fail is equivalent to an initial grade of Fail." (*Id.* at Ex. E, Section VIII, Part H (4)).

4) "Reasons for dismissal include, but are not limited to . . . [e]xceeding the limitation on number of failed blocks or courses . . . or having other persistent academic difficulty . . . [or] [f]ailure to satisfy the conditions for removal from Academic Warning or Academic Suspension." (*Id.* at Ex. E, Section XIV, Part A)).

5) The procedures for dismissal provide:

   a. That the student shall receive at least two weeks' notice of a scheduled hearing along with the opportunity to appear before the Academic Standing Committee to discuss the reasons for dismissal.

   b. After considering the facts, the Academic Standing Committee decides whether to dismiss the student and the student and Dean of the school are informed of the decision.

   c. The student may appeal the decision by contacting the Dean within two weeks of being notified of the decision.

   d. The Dean's decision regarding the appeal is final. (*Id.* at Ex. E, Section XIV, Part B)).

Additionally, Plaintiff received the RWJMS Clerkship in Medicine Guidelines ("Clerkship Guidelines") at the start of the Medicine Clerkship rotation. (*Id.* at Ex. C, Kadakia Dep. Tr., 145:14-147:7). The Clerkship Guidelines provide, in relevant part:

1) A "noncompetent rating in any single Competency or subcategory thereof may indicate the need for remediation and will necessitate review of the student's overall performance by the Department of Medicine Student Education Committee and final grade assignment by that Committee." (Maderer Decl., Ex. F, at 12).

2) A grade of CP requires remediation. Otherwise, a grade of Fail will result. (*Id.*)

3) "Students wishing to appeal their grades should submit the appeal in writing to the Site Director involved, with copies sent to the Clerkship Director and Clerkship Administrator. If that does not resolve the issue, the student may appeal in writing to the Department of Medicine Student Education Committee . . . whose decision will be final." (Maderer Decl., Ex. F, at 10).

*Plaintiff's Academic Performance*

During his first year of medical school, Plaintiff received an initial grade of Fail in Neuroscience. (Maderer Decl., Ex. C, Kadakia Dep. Tr., 291:25-292:9.) As a result of remediation, Plaintiff ultimately received a grade of Pass in the course. (*Id.*)

In his second year, Plaintiff received an initial grade of Fail in both Clinical Pathophysiology, and Behavioral Sciences & Psychiatry. (*Id.* at Kadakia Dep. Tr., 98:20-25; 100:12-15.) Plaintiff successfully remediated Behavioral Sciences & Psychiatry, but failed Clinical Pathophysiology a second time. (*Id.* at Kadakia Dep. Tr., 100:17-101:1-21.)

On July 15, 2010, the Medical School's Academic Standing Committee held a hearing to consider Plaintiff for dismissal from the Medical School for failing two courses in his second year

irrespective of remediation. (*Id.* at Kadakia Dep. Tr., 111:16-112:14.) However, the Academic Standing Committee decided not to dismiss Plaintiff. (*Id.* at Kadakia Dep. Tr., 112:21-113:1.) Instead, Plaintiff was placed on academic warning for the remainder of his time in medical school. (*Id.* at Kadakia Dep. Tr., 113:2-12.)

The third year at the Medical School requires that students complete clerkships. (*Id.* at Kadakia Dep. Tr., 120:15-121:18.) Each clerkship grade consists of an objective component based on the National Board of Medical Examiners SHELF exam, and a subjective component based on evaluations of the attending and resident physicians. (*Id.*) Plaintiff received a grade of Conditional Pass ("CP") in the Pediatrics Clerkship as a result of failing the SHELF exam. (*Id.* at Kadakia Dep. Tr., 121:12-122:6.) Plaintiff remediated his grade by retaking and passing the SHELF exam. (*Id.* at Kadakia Dep. Tr., 123:4-18.)

Plaintiff also received a grade of CP in the Psychiatry Clerkship as a result of failing the SHELF exam. (*Id.* at Kadakia Dep. Tr., 139:20-140:11.) He remediated his grade by retaking and passing the SHELF exam. (*Id.*)

Plaintiff took the Medicine Clerkship course from April 23, 2012 to June 15, 2012. (*Id.* at Kadakia Dep. Tr., 140:16-20.) The clerkship evaluation accounts for eighty percent of the student's grade, while the SHELF exam score accounts for twenty percent. (*Id.* at Kadakia Dep. Tr., 146:19-147:14.) As the site director for the course, Defendant, Dr. Sarang Kim ("Dr. Kim"), summarized the clinical ratings provided by the attending and resident physicians who worked with the medical students, and then assigned a corresponding grade to the student. (*Id.*; Ex. H., 20:7-17.) The following physicians observed Plaintiff during the Medicine Clerkship and evaluated his performance: Drs. Ateka Gunja, Cyrus Sebastian, Lili Chan, Krishna Dondetti, Manish Patel, Kashif Janjua. (*See* Defs.' Statement of Facts ¶¶ 54-55.) Overall, these doctors

5

expressed concern over Plaintiff's lack of clinical knowledge and ability to apply that knowledge to the patient setting. (*See id.*) Accordingly, Dr. Kim determined that Plaintiff deserved the lowest rating (i.e., non-competent) in five of the twelve applicable competencies. A non-passing grade can be given to a student who receives the lowest rating in any competency. (Maderer Decl., Ex. H, 48:14-20; Ex. R.) As such, Dr. Kim submitted her final evaluation to Dr. John Walker ("Dr. Walker"), the Clerkship Director, who determined that Plaintiff failed the Medicine Clerkship. (Maderer Decl., Ex. J, 109:16-23; 112:18-25.)

As a result of this failing grade, Plaintiff submitted a written appeal to Dr. Kim, which Dr. Kim denied. (*Id.* at Kadakia Dep. Tr., 213:17-214:4.) Thereafter, Plaintiff appealed his grade to the Student Education Committee, which also denied Plaintiff's appeal. (Maderer Decl., Ex. G-2, Request for Admissions #24.)

On or about October 15, 2012, Plaintiff received a letter from Sonia Garcia Laumbach, Assistant Dean for Student Affairs at the Medical School, indicating the Plaintiff would be considered for dismissal because he received two grades of CP in the Pediatrics and Psychiatry Clerkships, and one grade of Fail in the Medicine Clerkship. (Maderer Decl., Ex. S.) The letter also indicated that a dismissal hearing would occur before the Academic Standing Committee on November 8, 2012. (*Id.*) In anticipation of the dismissal hearing, Plaintiff retained Eric Pennington, Esq. to prepare a letter to the Academic Standing Committee. (Maderer Decl., Ex. C, Kadakia Dep. Tr., 252:4-19.) Plaintiff also submitted three additional letters of advocacy written by two RWJMS faculty members and Plaintiff's colleague. (*Id.* at Kadakia Dep. Tr., 246:8-16;

250:12-21.) On November 15, 2012, Plaintiff appeared before the Academic Standing Committee with counsel.[3] (*Id.* at Kadakia Dep. Tr., 244:10-22.)

On or about November 16, 2012, Plaintiff received a letter from Dr. Carol Terrengino, Acting Chair of the Academic Standing Committee, indicating that the Committee voted to dismiss Plaintiff because of his "persistent academic difficulty and exceeding [the] limitation on the number of failed blocks or courses." (Maderer Decl., Ex. W.) The letter further informed Plaintiff that he was entitled to appeal the decision to Dr. Peter S. Amenta, Dean of the Medical School. (*Id.*)

Plaintiff appealed to Dean Amenta, who on January 7, 2013, ultimately upheld the decision to dismiss Plaintiff from the Medical School. (Maderer Decl., Ex. Y.)

**PROCEDURAL HISTORY**

On March 21, 2013, Plaintiff filed a three-count Complaint against Defendants in the Superior Court of New Jersey, Essex County alleging Defendants violated his due process rights under the Fourteenth Amendment of the United States Constitution (Count One), and under Article I, ¶ 2 of the New Jersey Constitution (Count Two), and that Defendants further violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* (Count Three). (Dkt. No. 1.)

Defendants removed the matter to this Court on April 16, 2013. (*Id.*) Defendants filed their answer on May 7, 2013. (Dkt. Nos. 9, 10.)

On March 24, 2014, the parties filed a joint stipulation of dismissal agreeing to dismiss Count Three of the Complaint with prejudice. (Dkt. No. 24.)

---

[3] Plaintiff's attorney waited for Plaintiff immediately outside of the hearing room and advised Plaintiff throughout the proceedings.

On August 15, 2014, Defendants filed the instant Motion for Summary Judgment. (Dkt. No. 29.) Plaintiff filed opposition on September 22, 2014. (Dkt. No. 31.)

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

8

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

**DISCUSSION**

*Plaintiff's Due Process Claims (Counts One and Two)*

Plaintiff asserts due process claims under the United States and New Jersey constitutions. (Dkt. No. 1.) Although it is unclear from the Complaint, Plaintiff's opposition brief alleges violations of his substantive and procedural due process rights. Defendants contend that Plaintiff has no substantive due process right to continue his medical school education and that the Medical School's academic decisions require deferential treatment. (Defs.' Br. 4-5.) Furthermore, the record reflects that Plaintiff was afforded numerous opportunities to be heard beyond constitutionally required procedural due process. As a result, Plaintiff's claims cannot overcome summary judgment.

1. *Substantive Due Process*

The Third Circuit has "strongly suggested that the right to continued graduate education is not protected by substantive due process." *McMahon v. Rutgers*, 2013 WL 5937416, *9 (D.N.J. Nov. 4, 2013); *Manning v. Temple Univ.*, 157 F. App'x 509, 514 (3d Cir. 2005). Courts in this District have noted that the Supreme Court of the United States has not recognized "a

9

constitutionally protected property or liberty interest in completing a professional program of study." *Mucci v. Rutgers*, 2011 WL 831967, *18 (D.N.J. Mar. 3, 2011). Here, Plaintiff contends that he has a substantive due process right to continue his medical school education, citing several inapposite cases to support his claim.[4] (Pl.'s Opp. 21-22.) Plaintiff's assertion that he has such a right to continue at the Medical School is insufficient to withstand summary judgment.

Nevertheless, the Third Circuit has presumed that a student may have a "property interest" in continuing his graduate studies. *McMahon v. Salmond*, 573 Fed. App'x. 128, *133 (3d Cir. Aug. 4, 2014). Assuming, *arguendo*, that Plaintiff has such a right, the next step is to determine whether the Medical School's decision to terminate Plaintiff was arbitrary and capricious. *Id.* at 133-134. When courts are asked to review a "genuinely academic decision . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986) (quoting *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225).

Plaintiff has failed to meet his burden of proving that Defendant's decision to dismiss him was "beyond the pale of reasoned academic decision-making." *McMahon v. Rutgers*, 2013 WL 5937416, *9; *Ewing*, 474 U.S. at 227–28. Here, the record demonstrates that Plaintiff was legitimately dismissed because of his continuous and obvious academic difficulties. *See Mucci*, 2011 WL 831967, at *19 ("A minimum grade-point average is a legitimate and rational means for

---

[4] *See, e.g.*, *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 84 (1978) (case cited by Plaintiff where the Court stated that it "need not decide, however, whether respondent's dismissal deprived her of a liberty interest in pursuing a medical career"); *Goss v. Lopez*, 419 U.S. 565, 573-75 (case cited by Plaintiff where the Court found a substantive due process right to a primary education) (emphasis added).

evaluating student performance and eligibility to continue in a program of study."). Plaintiff received an initial grade of Fail in Neuroscience, Clinical Pathophysiology, and Behavioral Sciences & Psychiatry. (*Id.* at Kadakia Dep. Tr., 98:20-25; 100:12-15.) Subsequently, Plaintiff was placed on academic warning and the Medical School decided not to dismiss him at that time. In his third year, Plaintiff received a grade of CP in the Pediatrics and Psychiatry clerkships. Further, Plaintiff received a grade of Fail in the Medicine Clerkship, after receiving several negative reviews from the doctors who supervised him. Thus, there is ample evidence that the Medical School properly dismissed Plaintiff after considering his academic performance.

### 2. *Procedural Due Process*

The Third Circuit has held that procedural due process is satisfied when a university conducts "an informal faculty evaluation with the student prior to discharging a student for academic reasons." *McMahon v. Rutgers*, 2013 WL 5937416, *9 (internal quotations omitted); *Mauriello*, 781 F.2d at 51-52. The *Mauriello* court concluded that Plaintiff received adequate procedural due process, as she was warned of her academic weaknesses, was provided an opportunity to improve, and was allowed to present her matter to the graduate committee. *Id.*

Similarly, here, Plaintiff was afforded far greater procedural due process than the "informal faculty evaluation" that is constitutionally required. After his second year, the Medical School held a hearing to consider Plaintiff for dismissal. Although the Medical School decided not to dismiss Plaintiff, Plaintiff was on notice that he could be subject to dismissal as a result of being placed on academic warning. Subsequently, Plaintiff's academic difficulties persisted and the Medical School allowed him to remediate the courses that he failed. When Plaintiff received the two CP grades and the Fail grade in the Medicine Clerkship, Plaintiff was eligible for dismissal pursuant to the Academic Rules and Regulations. Plaintiff was allowed to appeal his grades to Dr.

11

Kim, to the Student Education Committee, and finally, to Dean Amenta, all of whom upheld the decision to dismiss Plaintiff. Furthermore, Plaintiff retained an attorney throughout his appeal process. Hence, Plaintiff was provided with more than adequate notice and an opportunity to be heard. Accordingly, Plaintiff's procedural due process claim fails.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>


Orig:       Clerk
cc:         Parties
            Magistrate Judge Steven C. Mannion